**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CLAUZELL WILLIAMS, | |
| Plaintiff, | No. 19 CV 7116 |
| v. | Judge Manish S. Shah |
| UNION PACIFIC RAILROAD COMPANY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clauzell Williams worked for Union Pacific, operating heavy machinery and handling inventory around active railroad tracks. After the company learned that Williams, who is African American, suffered from a heart condition, it imposed permanent restrictions on him and refused to allow him to return to his job. Williams asked to have the restrictions lifted and sought a transfer to another position, but the company denied those requests and ended his employment. Plaintiff sues Union Pacific for disability and race discrimination in violation of the Illinois Human Rights Act. The company moves for summary judgment under Federal Rule of Civil Procedure 56. For the reasons discussed below, the motion is granted.

## I. Legal Standards

Summary judgment is appropriate when there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). I construe all facts and reasonable inferences in favor of Williams, the nonmoving party. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 377–78 (7th Cir. 2020). Union Pacific bears the burden of establishing that the summary judgment standard is met, but Williams must put forward enough evidence to establish every element of his claims and show that he can carry his burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background

Clauzell Williams worked for Union Pacific for twenty years, most recently as a material handler in Chicago. [38] ¶¶ 8–9, 88–92; [1-1] ¶ 4.[1] Material handlers were required to make deliveries to a locomotive shop, which involved crossing railroad tracks. [38] ¶¶ 11–12. Williams's job also required him, working largely alone, to access shelves more than four feet off the ground, use machinery for at least three hours per shift, and repeatedly lift up to seventy-five pounds. *Id.* ¶¶ 13–16. Brian Simpson was Williams's direct manager. [41] ¶ 1. The two men worked the same shift for the last year of Williams's employment, and, according to Simpson, plaintiff was always able to perform the work of a material handler. *Id.* ¶¶ 2–4.

Williams said that in 2016 he suffered a stroke at home while recovering from rotator cuff surgery. [38] ¶¶ 18–19. He received treatment, began taking prescription

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are largely taken from defendant's response to plaintiff's Local Rule 56.1 statement, [38], and plaintiff's response to defendant's statement, [41], where both the asserted fact and the response are set forth in the same document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3). I ignore legal arguments in the statements of facts and additional facts included in response to an asserted fact that do not controvert the asserted fact. *Id.* 56.1(d)(4), (e)(2). I also consider "other materials in the record" as appropriate. Fed. R. Civ. P. 56(c)(3).

medication, and saw a cardiologist, but didn't tell Union Pacific about the stroke. *Id.*
¶¶ 20–21, 23–24. He returned to work. *Id.* ¶¶ 23–24. The company didn't learn about
plaintiff's health issues until two years later, when Williams requested medical leave.
*Id.* ¶ 25. The company granted the request after Williams reported being short of
breath, starting medication, and having a defibrillator implanted. *Id.* ¶¶ 25–26.
Williams's cardiologist found that he had severe cardiomyopathy. *Id.* ¶ 30. The doctor
said that Williams could return to work but recommended that he take a desk job
that required only light duty. *Id.*

Union Pacific's associate medical director conducted his own evaluation of
Williams's fitness for duty. [38] ¶¶ 31–41. That doctor found that plaintiff had three
conditions: (1) an implantable cardiac defibrillator; (2) left ventrical ejection fraction
of twenty to twenty-five percent; and (3) history of stroke. *Id.* ¶ 38. Because these
conditions meant Williams might be suddenly incapacitated, presenting a risk of
injury to himself or others, the company's doctor recommended permanent
restrictions on Williams's work. *Id.* ¶¶ 40–41. Among other limits, Williams was
prohibited from operating various types of machines; working on or near moving
trains, freight cars, or locomotives; work requiring critical decision making; work at
unprotected heights over four feet; work with less than two other people; and work
requiring him to lift ten pounds more than occasionally. *Id.* ¶ 41.

Union Pacific decided that Williams couldn't go back to his old job. [38] ¶ 52.
To make this decision, Williams's second-level supervisor, Randy Bridge, compared
Williams's restrictions with the material handler job description. [38] ¶¶ 43–45.

3

Bridge said that the essential features of the material handler position included (1) operating highway vehicles, trucks, tractors, on-track or mobile equipment, and forklifts; (2) operating cranes, hoists, or other machinery; (3) working near moving trains, freight cars, or locomotives; (4) working at unprotected heights over four feet above the work surface; (5) working with less than two other people; and (6) lifting seventy pounds regularly. *Id*. ¶¶ 47–48. Without knowing about Williams's heart conditions, *id*. ¶ 50; [41] ¶ 19, Bridge found that the restrictions interfered with essential functions of the position, and that no accommodations would make it possible for Williams to return to the material handler job because accommodation would require "removal of an essential function" and "lowering of performance or production standards." [38] ¶¶ 45–46. Bridge never spoke with Williams or his direct supervisor about the restrictions or possible accommodations, and didn't look into whether Williams could be moved into another position. [41] ¶¶ 19–20.

Two other Union Pacific employees—a director and an assistant vice president—agreed that no reasonable accommodations were available that would allow Williams to return to the material handler position. [38] ¶ 49. None of the Union Pacific employees who made the decision that Williams couldn't go back to his job had regularly worked with or evaluated him. [41] ¶¶ 13, 17, 23–24. Williams's direct manager (Simpson) received notice of his work restrictions, *id*. ¶ 5, but never analyzed whether Williams could return to work with accommodations. *Id*. ¶¶ 9–12, 14–15, 18–19.

4

Union Pacific referred Williams to its disability management department. [38] ¶ 53. He accepted vocational counseling services, and said that he was interested in being reassigned to a bridge tender position. *Id.* ¶¶ 54–56. But Union Pacific decided that Williams couldn't work that job, either. *Id.* ¶¶ 57–72. Knowing only Williams's work restrictions, *id.* ¶ 58; [41] ¶ 36, the manager of the bridge tender job determined that the restrictions interfered with essential functions of that position, and that no reasonable accommodations were available. [38] ¶¶ 59, 63–71.

Williams repeatedly asked Union Pacific to remove his work restrictions, but the company refused, requiring "objective testing and documentation" showing an improvement in Williams's condition. [38] ¶¶ 73–74. He submitted more records, but none of Williams's diagnoses changed and the company's doctor declined to review most of the restrictions. *Id.* ¶¶ 75–82. Williams also worked with Union Pacific's career counselor to look for other jobs in the company. *Id.* ¶¶ 83–85. The search was limited, however, because Williams told her "that he did not wish to leave the Chicago area." *Id.* When the company counselor offered to help him find work outside Union Pacific, Williams said he wasn't interested. *Id.* ¶¶ 86–87. Union Pacific's counselor did not explore other positions in the Chicago area with Williams because he only indicated interest in the bridge tender position. [41] ¶ 33. As Williams was unwilling to relocate or work outside the company, the counselor decided that there was nothing more that she could do to help. [38] ¶ 91.

Williams said he knew of two white employees who were allowed to return to work at Union Pacific despite having a pacemaker or a defibrillator. [41] ¶ 39. He

5

asserts that these two employees were treated better than he was because of their race, *id.* ¶ 40; [38] ¶ 100, but he never met with or spoke to either of them, had no personal knowledge of their health conditions or work restrictions, and was merely repeating what others had told him. *Id.* ¶¶ 100–107.

Union Pacific terminated Williams's employment in March 2019. [38] ¶ 88; [1-1] ¶ 4. Williams filed a charge of discrimination with the Illinois Department of Human Rights a month later, [38] ¶ 6, and then this lawsuit. *Id.* ¶ 3; [1-1].

## III.  Analysis

The Illinois Human Rights Act prohibits an employer from discriminating against an employee on the basis of race or disability. 775 ILCS 5/2-102(A). The parties agree that plaintiff's claims should be reviewed using analogous federal standards. *See* [30] at 4; [37] at 1, 14–15. Courts use the Americans with Disabilities Act approach to assess claims for disability discrimination, *see Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019), and the Title VII framework for claims of race discrimination. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016); *Zaderaka v. Illinois Hum. Rts. Comm'n*, 131 Ill.2d 172, 178 (1989).

The key question here is "whether the evidence would permit a reasonable factfinder to conclude that" Williams's race or disability caused Union Pacific to take an adverse action against him. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016); *see Igasaki v. Illinois Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021); *Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 996–97 (7th Cir. 2020).

6

One way of proving employment discrimination under either Title VII or the ADA is the burden-shifting framework created by *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Id*. Under that approach, Williams must make a prima facie case of discrimination. *See Igasaki*, 988 F.3d at 957. If he does, Union Pacific must then offer a nondiscriminatory motive for its action, which can be rebutted if the plaintiff shows that the stated reason was a pretext for discrimination. *See id*; *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir.), *reh'g denied* (July 31, 2020)). Under either the *Ortiz* or *McDonnell Douglas* approach, I evaluate all of the evidence as a whole. *Ortiz*, 834 F.3d at 766.

### A.    Disability Discrimination

Williams argues that Union Pacific discriminated against him on the basis of disability by imposing permanent work restrictions and failing to provide a reasonable accommodation. [37]; [1-1] ¶ 23. Since the parties concentrate on the *McDonnell Douglas* framework, I do the same, and begin by asking whether plaintiff has alleged a prima facie case of discrimination. *See Igasaki v. Illinois Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021).

Under the ADA, an employer discriminates when it takes an adverse action against an employee because of the employee's disability or fails to provide a reasonable accommodation to a disabled employee. 42 U.S.C. § 12112; *see Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (discussing the adverse action theory of discrimination); *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019), *as amended* (Aug. 9, 2019) (discussing failure to accommodate). To prove

discrimination based on adverse action, Williams must show that he is disabled, qualified to perform the essential functions of his job either with or without reasonable accommodation, and that he suffered an adverse employment action because of his disability. *Gogos*, 737 F.3d at 1172 (citation omitted). To prove a failure to accommodate, plaintiff must prove the same first two elements (disability and qualification), and show that Union Pacific was aware of his disability and failed to reasonably accommodate it. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) (citation omitted).

There is no dispute that Williams was disabled, [30] at 6; [37] at 1, that he suffered an adverse employment action, and that Union Pacific was aware of his disability.[2] The company argues that plaintiff was not a qualified individual and it did not fail to reasonably accommodate him. To show that he is qualified, Williams must provide evidence such that a rational jury could find that he could "perform the essential functions of the employment position' either 'with or without reasonable accommodation.'" *McAllister v. Innovation Ventures, LLC,* 983 F.3d 963, 968 (7th Cir. 2020) (quoting *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 628 (7th Cir. 2020) and 42 U.S.C. § 12111(8)).

Plaintiff argues that he was qualified with or without accommodation, pointing to statements made by his former manager, Brian Simpson. [37] at 1–2. Williams also

---

[2] Union Pacific does not dispute these elements. *See* [30]; [40]. The company imposed permanent restrictions on plaintiff and terminated his employment. [38] ¶¶ 36–52, 88; [1-1] ¶ 4; *see Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (citation omitted) (an adverse action is "one that significantly alters the terms and conditions of the employee's job."). Defendant became aware of plaintiff's disability when he requested medical leave. [38] ¶¶ 25–27.

claims that Union Pacific's process in finding him an accommodation was flawed or nonexistent. *Id.* at 2–13. Union Pacific argues that without accommodation Williams could not perform the work of a material handler because plaintiff could have been suddenly incapacitated, and therefore posed a significant risk to himself and others. [30] at 8. Defendant relies on the opinion of its doctor, [40] at 2–3, and says that there were no reasonable accommodations it could have provided to Williams to allow him to return to work. *Id.* at 5.

### 1. *Qualification Without Accommodation*

The essential functions of the material handler position are undisputed. They include (1) operating highway vehicles, trucks, tractors, on-track or mobile equipment, and forklifts; (2) operating cranes, hoists, or other machinery; (3) working near moving trains, freight cars, or locomotives; (4) working at unprotected heights over four feet above the work surface; (5) working with less than two other people; and (6) lifting seventy pounds regularly. [38] ¶¶ 47–48; *see* [41] ¶¶ 3, 8; *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019), *as amended* (Aug. 9, 2019) (quoting 42 U.S.C. § 12112(8)) (The ADA "directs that courts shall give 'consideration … to the employer's judgment as to what functions of a job are essential.'").

Williams's former manager, Simpson, said that plaintiff had always been able to do the job. [41] ¶¶ 3–4. But while Simpson worked closely with Williams for the last year of his employment, *id.* ¶ 2, a plaintiff's "ability to come to work, or to otherwise perform the essential functions of [his] job, is examined as of the time of the adverse employment decision at issue." *Stern v. St. Anthony's Health Ctr.*, 788

F.3d 276, 287 (7th Cir. 2015) (quoting *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)); *see Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 545 (7th Cir. 2002).

Simpson's testimony is not probative of Williams's ability to perform the essential functions of a material handler because of the roughly three-month gap between when plaintiff went on leave and when Union Pacific imposed work restrictions. *See* [38] ¶¶ 26, 36–38 (Williams's request for medical leave was approved on February 17, 2018; defendant's doctor imposed restrictions in May 2018). While Simpson's statements indicate that Williams could perform the work of a material handler before his medical leave, plaintiff left work because he was short of breath, started medication, and had a defibrillator implanted, [38] ¶ 25, and while on leave he was diagnosed with severe cardiomyopathy. *Id*. ¶ 30. Simpson didn't speak to plaintiff's ability to meet the requirements of the position at the time Union Pacific imposed restrictions, and so his testimony does not create an issue of fact as to whether Williams was a qualified individual without accommodation. *See Stern*, 788 F.3d at 286–87; *Peters,* 307 F.3d at 545.

Since plaintiff doesn't offer any other evidence on this point, he cannot make the required showing that he was qualified without accommodation.

10

### 2. *Qualification With Accommodation*

Reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices ... and other similar accommodations." 42 U.S.C. § 12111(9)(B). Plaintiff argues that the company could have transferred him to another position, either in Chicago or outside Illinois, and that Union Pacific did not make a good faith effort to find a way for Williams to return to his job as a material handler. [37] at 4. Williams also claims that the company failed to participate in the interactive process of finding a reasonable accommodation because no one engaged with him about his restrictions or spoke to his former manager. *Id.* at 6–13.

Reassignment to a vacant position can be a reasonable accommodation. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) (citing 42 U.S.C. § 12111(9)(B)). But to prove a failure to accommodate on this basis, a plaintiff must show "that there were, in fact, vacant positions available at the time of his termination." *Id.* (citing *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 750 (7th Cir. 2011)). Furthermore, the employee must be qualified for the vacant position, *see Pond v. Michelin N. Am., Inc.*, 183 F.3d 592, 595 (7th Cir. 1999), and an employer is not required to "bump" other employees to create an opening or to create a new position entirely. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015) (citation omitted).

Williams has not pointed to any particular vacancy for which he was qualified. Instead he says that Union Pacific didn't look hard enough for an opening. *See* [37]

11

at 3–4. While plaintiff claims that defendant's career counselor never looked for a job for him (except the bridge tender position), *id*, Williams also agreed that he worked with Union Pacific to "look for alternative positions within the railroad." [38] ¶ 83. And Williams put limits on the search: he didn't want to leave the Chicago area or the company. *Id*. ¶¶ 85–87. Union Pacific followed those instructions. *See id*. ¶¶ 83–87, 91. Because defendant wasn't required to go against plaintiff's wishes in searching for a job and the company looked for open work within Williams's parameters, Union Pacific met its requirements to look for a suitable transfer. *See Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 682 (7th Cir. 2010) (citing *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir. 1996)) ("By rejecting the proposed accommodations, [plaintiff] was responsible for terminating the interactive process and hence not entitled to relief."). Even if the search had been inadequate, the real problem for plaintiff is that to succeed in showing a failure to accommodate by way of reassignment he needed to point to a vacant position that existed when Union Pacific imposed its restrictions. *See Dunderale v. United Airlines, Inc.*, 807 F.3d 849, 856 (7th Cir. 2015). Because Williams hasn't done that, his argument for accommodation through reassignment doesn't hold up.[3]

Plaintiff's other arguments that he was qualified to work with accommodation aren't persuasive, either. Williams maintains that Union Pacific violated the Illinois Human Rights Act because the company did not consider modifications to the

---

[3] Plaintiff doesn't dispute that he was not qualified for the bridge tender position. *See* [37] at 3–4; [38] ¶¶ 64–70.

material handler job duties. [37] at 4. An initial problem for plaintiff is that there's little evidence to suggest that he actually requested modifications. Generally, under the ADA an employee must request a specific accommodation for his disability in order to claim that he was improperly denied one. *See Stelter v. Wisconsin Physicians Serv. Ins. Corp.*, 950 F.3d 488, 491 (7th Cir. 2020); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015). Williams sought a transfer to another position, [38] ¶ 56, and asked to have his medical restrictions lifted, *id.* ¶ 73, but didn't ask Union Pacific for any other accommodations. *Id.* ¶ 89.

Even assuming plaintiff had made that request, however, Union Pacific didn't violate the law by not modifying Williams's old job.[4] As a material handler, plaintiff had to operate machinery, work near moving trains, work at unprotected heights, work alone, and lift seventy pounds regularly. [38] ¶¶ 47–48. According to defendant's doctor, Williams could not do any of those things safely. *Id.* ¶ 41. Plaintiff's second-level supervisor, comparing these medical restrictions with the requirements of the material handler position, found that no reasonable accommodations existed because accommodation "would require removal of an essential function" and "lowering performance or production standards." *Id.* ¶¶ 44–48; [41] ¶ 21 (Bridge did not identify a possible modification because he determined that all functions were essential). That determination was reasonable because "[o]nce an employee is evaluated by a doctor,

---

[4] Job restructuring "includes modifications such as: reallocating or redistributing marginal job functions that an employee is unable to perform because of a disability; and altering when and/or how a function, essential or marginal, is performed." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 290 (7th Cir. 2015) (quoting EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (2002)). Employers don't have to reallocate essential functions, but can do so if they wish. *Id.*

13

an 'employer is entitled to rely on a physician's recommendation that the employee is not able to safely perform an essential function of his job.'" *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 968 (7th Cir. 2020) (quoting *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 294 (7th Cir. 2015)).

Union Pacific was not required to reallocate the essential functions of the position to other employees, *Stern*, 788 F.3d at 290, and plaintiff has offered no evidence that the job could be altered such that he could perform it given his restrictions. *See Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (citing *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 863–64 (7th Cir. 2005)) ("In response to an employer's motion for summary judgment, it is the plaintiff's burden to produce evidence sufficient to permit a jury to conclude that [he] would have been able to perform the essential functions of [his] job with a reasonable accommodation.").

Plaintiff never asked for the material handler position to be modified and his medical conditions made it impossible for him to perform the essential functions of the job. Union Pacific was not required to strip the position of its principal duties in order to accommodate him. *See Stern*, 788 F.3d at 289–90 (quoting *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004)). So there is no evidence that Williams was qualified for the job with an accommodation or that Union Pacific failed to accommodate him.

14

### 3. *Interactive Process*

After an employee asks for an accommodation, "the employer must engage with the employee in an interactive process to determine the appropriate accommodations under the circumstances." *Kauffmann v. Petersen Health Care VII, LLC*, 769 F.3d 958, 936 (7th Cir. 2014) (citations omitted). Plaintiff says that didn't happen here. [37] at 6–13. As Williams acknowledges, however, [37] at 7, a failure to engage in the interactive process is not an independent basis for liability. *See McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 972 (7th Cir. 2020). A process failure is actionable only when it "prevents identification of an appropriate accommodation." *Id*. (quoting *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014)).

Union Pacific could have done more to collaborate with Williams in an attempt to find an accommodation. For instance, no one appears to have explained to Williams why the essential functions of the material handler could not be altered such that plaintiff could continue working. [41] ¶ 19. In fact, none of the Union Pacific officers who found that plaintiff couldn't return to work ever spoke to plaintiff about the decision, *id*. ¶¶ 19, 29; [38] ¶ 49, and no one at Union Pacific prompted Williams to talk about whether reasonable accommodations would have allowed him to return to his old job. *Id*.[5] But Union Pacific didn't drop the ball entirely. Plaintiff worked with defendant's vocational counselor for months in an attempt to find an alternative

---

[5] Williams spends much of his brief arguing that the Union Pacific officers who considered accommodations for him did a shoddy job. [37] at 6–13. Plaintiff misrepresents the testimony of one of these officers, [41] ¶ 27, but does point out that another completed the evaluation in five minutes—which suggests that he was less than thorough in his evaluation. *Id.* ¶ 37.

position, and talked through the process for lifting work restrictions with her. [38] ¶¶ 52–58, 72–74, 83–92. The company's decisionmakers weren't required to consult with Williams's direct supervisor about accommodations, review plaintiff's medical records (rather than the restrictions imposed by Union Pacific's doctor), possess special reasonable-accommodations training, or have experience working directly with the plaintiff.

Defendant's interactive process wasn't perfect, but that doesn't change the outcome in this case.[6] Even if Union Pacific had entirely failed to engage in the process, "that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether [he] was able to perform the essential functions of [his] job with an accommodation." *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563–64 (7th Cir. 1996)). Because Williams hasn't made that showing, the shortcomings in Union Pacific's interactive process aren't a basis for liability.

Construing the facts and reasonable inferences in favor of Williams, he hasn't shown that he was qualified under the ADA or that a reasonable accommodation existed. Under either an adverse action or failure to accommodate theory of disability

---

[6] The cases relied on by plaintiff are distinguishable. *Bultemeyer* involved a mentally ill employee and accommodations were available that could have allowed the plaintiff to perform the essential functions of his job. *See Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1284–87 (7th Cir. 1996). Similarly, the plaintiff in *Spurling* showed "that a reasonable accommodation was readily available." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014). Williams hasn't shown that the failures of Union Pacific's interactive process prevented the identification of a workable accommodation. That means that the inadequacies in Union Pacific's interactive process aren't a basis for liability. *See id.*

16

discrimination, then, Williams's hasn't demonstrated that he can carry his burden of proof at trial.

## B.    Pretext and Race Discrimination

Even if Williams had alleged a prima facie case of disability discrimination, his claim wouldn't survive summary judgment under the *McDonnell Douglas* approach because Union Pacific had a legitimate reason to restrict Williams's employment, one that plaintiff doesn't discredit. To show defendant's reason is pretextual, Williams needs to prove that Union Pacific's safety rationale for imposing restrictions on him was dishonest and that the true reason was discrimination. *See Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007). The issue isn't the fairness or accuracy of the company's reasoning, but the honesty of Union Pacific's belief in the reason stated. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).

Defendant says it placed permanent restrictions on Williams in order to protect plaintiff and others. [30] at 9–11. Plaintiff's history of stroke, defibrillator, and heart problems are undisputed. [38] ¶¶ 25–30, 38. Union Pacific's doctor, considering these conditions alongside the work of a material handler, found that a sudden incapacitation while operating heavy machinery "could be catastrophic." *Id.* ¶¶ 35–40. Having decided that the work restrictions imposed by that doctor conflicted with essential functions of Williams's job, the company determined that no reasonable accommodations would permit plaintiff to return to his job. *Id.* ¶¶ 47–48.

Safety is a legitimate, non-discriminatory reason for an employer to act. *See Palmer v. Cir. Ct. of Cook Cnty., Illinois*, 117 F.3d 351, 352 (7th Cir. 1997) (The ADA

does not require an employer to operate "on a razor's edge—in jeopardy of violating the Act if it fired [a potentially dangerous employee], yet in jeopardy of being deemed negligent if it retained him and he hurt someone."); *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 294–95 (7th Cir. 2015). That the Union Pacific employees who decided that no accommodations could be made didn't know Williams and failed to consult with his direct supervisor is not evidence of a discriminatory motivation. Plaintiff hasn't offered evidence to show that Union Pacific's safety concern was a lie.

Union Pacific's legitimate reason for taking the adverse actions in this case also undermines Williams's claim for discrimination on the basis of race. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879–880 (7th Cir. 2016) (describing the burden-shifting framework under Title VII). Plaintiff hasn't offered evidence that defendant's reason for imposing restrictions was racially discriminatory, *see* [37] at 13–16, and his claim for race discrimination fails as a result.

Summary judgment is also appropriate on plaintiff's racial discrimination claim because he hasn't made out a prima facie case. *See Bagwe*, 811 F.3d at 880 (citation omitted) (under the *McDonnell Douglas* approach, a Title VII plaintiff must show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably.).

18

In dispute here is only the fourth element: similarly situated employees. [30] at 14. Plaintiff said he knew two Union Pacific employees (both white) who were allowed to hold safety-sensitive jobs even though they had defibrillators and pacemakers. [38] ¶ 100; [41] ¶¶ 39–40. But Williams also admitted that he "has no personal knowledge" about these employees' health conditions or work restrictions, had never met or spoken with either of them, and was merely repeating what others had told him. [38] ¶¶ 101–107. Because statements used to oppose a summary judgment motion "must be made on personal knowledge," Fed. R. Civ. P. 56(c)(4), plaintiff's testimony does not represent admissible evidence and cannot support his IHRA claim. *See Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). Williams hasn't offered other evidence of similarly situated employees and cannot establish every element of his race discrimination claim.

## C. *Ortiz*: Totality of the Evidence

The parties argued this case under *McDonnell Douglas*. Setting aside that framework, the outcome is the same. Viewing the evidence as a whole, no reasonable factfinder would conclude that plaintiff's race or disability caused Union Pacific to impose work restrictions on Williams and terminate his employment. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016). Plaintiff has shown that he suffered an adverse action. But the only reason in the record as to why Union Pacific took that action is that a doctor decided that it would be unsafe for Williams to continue working given the risk that he might be suddenly incapacitated. Under the IHRA, that doesn't add up to discrimination.

## IV. Conclusion

Defendant's motion for summary judgment, [29], is granted. Enter judgment and terminate civil case.


ENTER:

_____
Manish S. Shah
United States District Judge

Date: October 1, 2021